38 So.3d 363 (2010)
John Allen RICKS and Rita Jane Ricks, Individually, and On Behalf of Their Minor Child, Jennifer B. Ricks[1]
v.
KENTWOOD OIL COMPANY, INC., Wade and Wanda Royals, Caryn Diddon, Jimmy Tate, Mitchell McIntyre, and Gerald Davis
Leo Ricks
v.
Kentwood Oil Company, Inc., Wade and Wanda Royals, Caryn Diddon, Jimmy Tate, Mitchell McIntyre, and Gerald L. Davis.
Nos. 2009 CA 0677, 2009 CA 0678.
Court of Appeal of Louisiana, First Circuit.
February 23, 2010.
Rehearing Denied June 25, 2010.
*365 Lewis O. Unglesby, Robert M. Marionneaux, Jr., Baton Rouge, LA, for Plaintiffs/Appellees John Allen Ricks, Rita Jean Ricks, Jennifer Ricks and Leo Ricks.
Edward A. Rodrigue, Jr., Metairie, LA, and Frank Winston, Jr., Washington, D.C., for Defendant/Appellant United States Fidelity and Guaranty Company.
Before CARTER, C.J., KUHN, GUIDRY, PETTIGREW, and HUGHES, JJ.
GUIDRY, J.
An insurer appeals a judgment awarding plaintiffs damages for fear of cancer and property damage. Finding merit in the insurer's contention that there was no coverage under the policies issued for the damages established by the plaintiffs, we reverse.

FACTS AND PROCEDURAL HISTORY
In the fall of 2000, it was reported that the underground storage tank (UST) at the Bolivar Grocery Store in Kentwood, Louisiana was leaking gasoline. The leakage migrated onto the land of some neighboring properties and allegedly contaminated the land and a residential water well on those properties. Separate suits were filed by the neighboring property owners and later consolidated for trial. In the first case, the trial court awarded John Allen Ricks, Rita Jean Ricks, and their daughter, Jennifer Ricks (collectively "the Rickses") damages for fear of cancer after finding that they ingested gasoline constituents that contaminated their residential water well. The trial court awarded the plaintiff in the other case, Leo Ricks,[2] property damages after finding that his property was contaminated by the gasoline that had migrated from the leaking UST.
The trial court found Kentwood Oil Company, as the company that supplied the gasoline and to whom the UST was registered with the Louisiana Department of Environmental Quality (LDEQ), liable for the Rickses' and Leo Ricks' damages. However, prior to trial, the Rickses entered into a settlement agreement wherein they dismissed their claims against Kentwood Oil Company while reserving their right to pursue their claims against United States Fidelity and Guaranty Company ("USF & G"), the insurer of Kentwood Oil Company, as a direct action suit.[3] Accordingly, the trial court rendered judgment solely against USF & G and it is from that judgment that the insurer now appeals.[4]
ASSIGNMENTS OF ERROR
1. The trial court erred in finding USF & G liable under the Direct Action *366 Statute, La. R.S. 22:655, re-codified at La. R.S. 22:1269, where plaintiffs failed to establish that the policyholder was liable to them and that their claims fell within the terms and limits of the contracts.
2. The trial court erred in finding Kentwood liable when it had no knowledge of any leak in the UST and did not have physical custody or control of the UST....
3. The trial court erred in finding Kentwood assumed custody of the UST, and became responsible for its condition to third parties, by registering the UST....
4. The trial court erred in awarding fear of cancer damages to the John Ricks family when they failed to prove genuine and serious mental distress arising from special circumstances.
5. The trial court erred in finding coverage under USF & G's contracts when plaintiffs' injuries first arose after those contracts had expired and thus were outside of the express terms of those contracts.
6. The trial court erred in finding that USF & G's contracts covered the Ricks' fear of cancer claims absent a showing that such fear resulted in severe and debilitating mental pain and anguish.
7. The trial court erred in awarding property damages to Leo Ricks when Leo Ricks did not name USF & G as a defendant in his petition and also never produced any evidence of the property's value or any diminution in property value.
DISCUSSION

Leo Ricks' Damage Award
We will first consider USF & G's seventh assignment of error relative to the award made to Leo Ricks in the judgment appealed. This consolidated appeal involves two casesone by the Rickses and one by Leo Ricks. The Rickses added USF & G as a defendant by way of a third supplemental and amending petition, which was filed in January 2004. Leo Ricks filed only one petition, in 2003, which did not name USF & G as a defendant. The two suits were consolidated in 2005, after USF & G was made a party to the Rickses' suit.
The consolidation of actions is a procedural convenience designed to avoid multiplicity of actions and does not cause a case to lose its status as procedural entity. La. C.C.P. art. 1561; In re Miller, 95-1051, p. 4 (La.App. 1st Cir.12/15/95), 665 So.2d 774, 776, writ denied, 96-0166 (La.2/9/96), 667 So.2d 541. The filing of a pleading or motion in one of several consolidated cases does not procedurally affect the others. The mere fact that a pleading, a discovery response, or correspondence bears the suit captions of the consolidated actions does not render the pleading or document applicable to all of the consolidated actions. The substance and purpose of such a pleading, the cause of action to which it relates, the parties actually affected, and the particular suit record or records in which it was filed must be considered to determine if it applies to only one or more of the consolidated actions. Dendy v. City National Bank, 06-2436, p. 6 (La.App. 1st Cir.10/17/07), 977 So.2d 8, 11.
Consolidation does not render the procedural or substantive rights peculiar to one case applicable to a companion case, and in no way enlarges or decreases the rights of the litigants. Despite an order of consolidation, each case must stand on its own merits. The consolidation of actions does not merge the two cases unless the records clearly reflect an intention *367 to do so. Johnson v. Shafor, 08-2145, p. 11 (La.App. 1st Cir.7/29/09), 22 So.3d 935, 941.
The records in these consolidated cases do not reflect an intention to merge the two cases. After consolidation, pleadings continued to be filed into the records that affected the cases individually.[5] Thus, we find that the consolidation of Leo Ricks' suit with the Rickses' suit did not operate to make USF & G a defendant to Leo Ricks' suit.
The trial court erred in rendering judgment in Leo Ricks' favor against USF & G, since Leo Ricks did not name USF & G as a defendant in his suit. See La. C.C.P. art. 2002; Guilbeau v. Roger, 443 So.2d 773, 774 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1224 (La.1984). Thus, that portion of the judgment is vacated. Cf. Arsenault v. Gulf States Utilities Co., Inc., 482 So.2d 695, 697 (La.App. 1st Cir.1985).

The Rickses' Damage Awards
We will begin our consideration of the awards made to the Rickses by considering USF & G's fifth assignment of error, wherein it asserts that because the Rickses' injuries arose after the policies issued by USF & G had expired, there was no coverage for the Rickses' claims. We agree.
From April 1986 to April 1988, the policies issued to Kentwood Oil Company by USF & G provided the following contractual language:
I COVERAGE ABODILY INJURY LIABILITY
COVERAGE BPROPERTY DAMAGE LIABILITY
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage....
. . .
III LIMITS OF LIABILITY
Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:
Coverage AThe total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence."
. . .
Coverage BThe total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the declarations as applicable to "each occurrence."
. . .
Coverages A and BFor the purpose of determining the limit of the Company's *368 liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
. . .
DEFINITIONS
When used in this policy (including endorsements form a part hereof):
. . . .
"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
. . . .
"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
. . . .
"property damage" means:
(1)physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
From April 1988 to April 1991, the policies issued to Kentwood Oil Company by USF & G provided the following contractual language:
SECTION ICOVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTSCOVERAGES A AND B.[[6]] This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages.....
. . . .
b. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."
c. "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.
. . . .
SECTION VDEFINITIONS
. . . .

*369 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
. . . .
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
12. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property; or
b. Loss of use of tangible property that is not physically injured.
From April 1991 to April 1993, the policies issued to Kentwood Oil Company by USF & G provided the following contractual language:
SECTION ICOVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.
. . . .
. . . .
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTSCOVERAGES A AND B.
b. This insurance applies only to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.
c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."
. . . .
SECTION VDEFINITIONS
. . . .
3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
12. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Henly v. Phillips Abita Lumber Co., 06-1856, p. 4 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1108. If the language in an insurance contract is clear and explicit, no further interpretation may *370 be made in search of the parties' intent. La. C.C. art. 2046; Henly, 06-1856 at 5, 971 So.2d at 1108. Courts lack the authority to change or alter the terms of an insurance policy under the guise of interpretation. Reinhardt v. Barger, 07-2363, p. 5 (La.App. 1st Cir.4/29/09), 15 So.3d 122, 125.
Despite the slight variations in description of the policy's coverage throughout the seven years USF & G provided commercial general liability insurance coverage to Kentwood Oil Company, the essential grounds for coverage remained the same. Claims for bodily injury or property damage would only be covered if the injury or damage occurred during the policy period. Because of the automatic renewals after the issuance of the initial policy to Kentwood Oil Company in 1986, the collective policy period wherein the Rickses' injuries must have occurred in order for there to be coverage under the policies issued by USF & G was from April 12, 1986 to April 12, 1993.
According to its reasons for judgment, the trial court made the following factual findings regarding the injuries sustained by the Rickses:
With the exception of some problems with skin rashes, this Court cannot conclude that Plaintiffs have established through a reasonable preponderance of medical evidence that any specific health problem is related to exposure to contaminants from the well water.
The Court can conclude that the experience did result in a fear of exposure to cancer or other diseases relating to the pollution of the well water and their ingestion and other use of the water.
Based on our review of the record, we find no manifest error in the factual findings of the trial court. Nevertheless, we do find that the trial court committed legal error in finding USF & G provided coverage for the Rickses' "fear of cancer" injuries under the policies issued to Kentwood Oil Company.
In St. Paul Fire & Marine Ins. Co. v. Valentine, 95-0649, p. 5 (La.App. 1st Cir. 11/9/95), 665 So.2d 43, 46, writ denied, 95-2961 (La.2/9/96), 667 So.2d 534 (emphasis added), this court held "[w]e conclude the term `occurrence' is generally understood to mean the time and/or event when negligence manifests itself by causing actual damages, rather than the commission of the causative negligence."
In Lawyer v. Kountz, 97-2701, pp. 11-12 (La.App. 4th Cir.7/29/98), 716 So.2d 493, 498, writ denied, 98-2290 (La.11/13/98), 731 So.2d 264, the court held that because the homeowner's alleged emotional distress injury "occurred following discovery of defects in the property and after the effective date of the Metropolitan policy," the emotional distress injury was not covered under the policy. In that case, a defect in the property (termite infestation) was not discovered until May 1996, after the policy coverage period for the homeowner's policy issued by Metropolitan Property and Casualty Insurance Company had expired in February 1996. It was upon discovery of the termite manifestation that the purchaser of the home became "emotionally distressed."
The insurance policy in Lawyer provided that "[w]e will pay all sums for bodily injury ... to others for which the law holds you responsible because of an occurrence." The policy further defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, resulting in bodily injury ... during the term of the policy." "Bodily injury" was defined as "any bodily harm, sickness or disease." Lawyer, 97-2701 at 6-7, 716 So.2d at 496.
*371 The language of the insurance policy in Lawyer is quite similar to the language of the USF & G policies in the present matter. Further, the Rickses' "fear of cancer" injuries are similar to the "emotional distress injury" suffered by the plaintiff in Lawyer, particularly in reference to the fact that such an injury could not arise until discovery or knowledge of the harmful conduct. "Fear of cancer" is not an injury that develops or is a latent manifestation to the exposure, but is reasonably understood to be immediate upon notice or knowledge of the exposure to the potentially cancer-causing substance.
Hence, while the trigger for any physical manifestation of injury could and should relate back to the date of the conduct within the coverage period because the injury and the act both occurred at the same time, (although the injury was not apparent (did not manifest) until later), emotional/mental distress damages should not be deemed to relate back to the time of the negligent conduct, because the actual damage in such cases is not the physical injury, but the emotional injury that comes from knowledge of the physical injury. See Cole v. Celotex Corporation, 599 So.2d 1058, 1061 and 1066 (La.1992)[7] (wherein the plaintiffs in that case had sustained "asbestos-related occupational diseases" and the Court determined that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later"); Lawyer, 97-2701 at 11-12, 716 So.2d at 498. So, without knowledge, it cannot be said that the emotional injury occurred simultaneously with the negligent act, and therefore the triggering event for coverage of such injuries should be the date of notice/knowledge/discovery, as opposed to the date of the harmful conduct.
In the present case, the Rickses uniformly testified that it was not until the pump on their residential water well was replaced in the fall of 1999 that they noticed a noxious smell emanating from the water supplied to their home by their residential well. After trying various remedies to eliminate the smell, including replacing the pump and a water tank attached to the well, in August 2000, the Rickses had the well water tested. It was following this testing of the well water that the Rickses first learned (discovered) that there were gasoline constituents in the water and following the discovery, they were informed that their use of the well water containing the gasoline constituents put them at risk to develop cancer. So the earliest date at which the Rickses could have sustained their "fear of cancer" injuries was in the fall of 2000. In other words, there was no "occurrence" of the claimed bodily injury (i.e., the "fear of cancer") until the fall of 2000. Since the last policy issued by USF & G to Kentwood *372 Oil Company expired on April 12, 1993, the Rickses' injuries did not "occur" within the policy period and therefore are not compensable under the USF & G policies issued to Kentwood Oil Company.[8]

CONCLUSION
Based on the foregoing discussion, we find that the trial court committed a procedural error in rendering judgment against USF & G in favor of Leo Ricks, in light of Leo Ricks' failure to make USF & G a party to his separate suit. We further find that the trial court committed a legal error in finding coverage under the policies issued by USF & G for the "fear of cancer" injuries sustained by the Rickses. Accordingly, we vacate that portion of the judgment rendered against USF & G awarding Leo Ricks damages. We reverse the remaining portion of the judgment rendered against USF & G awarding damages to Rickses and render judgment in favor of USF & G dismissing the Rickses' claims against the insurer. All costs of this appeal are assessed to the plaintiffs of the consolidated suits: Leo Ricks, John Allen Ricks, Rita Jean Ricks, and Jennifer Ricks.
VACATED IN PART; REVERSED IN PART; AND RENDERED.
KUHN, J., concurs in part and dissents in part and assigns reason.
CARTER, C.J., Concurs in Part, Dissents in Part with reasons.
PETTIGREW and HUGHES, JJ., concurs.
CARTER, C.J., Concurs in Part, Dissents in Part, and Assigns Reasons.
I agree that the portion of the judgment awarding damages to Leo Ricks must be vacated, as Leo Ricks did not name USF & G as a defendant in his suit. See LSA-C.C.P. art. 2002; Johnson v. Shafor, 08-2145 (La.App. 1 Cir. 7/29/09), 22 So.3d 935, 941 ("the consolidation of actions does not merge the two cases unless the records clearly reflect an intention to do so"); Guilbeau v. Roger, 443 So.2d 773, 774 (La.App. 1 Cir.1983), writ denied, 446 So.2d 1224 (La.1984). However, I disagree with the majority's analysis with regard to the claims of John Allen Ricks, Rita Jean Ricks, and Jennifer Ricks. I find no error in the trial court's conclusions that the Rickses proved they suffered compensable fear of contracting cancer, that Kentwood Oil is liable to the Rickses for damages resulting from that fear, and that the USF & G policies provide coverage for such damages. Accordingly, I would affirm those portions of the trial court's judgment awarding damages to John Allen Ricks, Rita Jean Ricks, and Jennifer B. Ricks.
KUHN, J., dissenting in part.
While I agree with the majority's disposition vacating the award in favor of Leo Ricks, I do not agree with the reversal of the awards for emotional distress damages for fear of cancer in favor of John Allen, Rita Jean, and Jennifer Ricks (the Ricks family).
The key relevant events giving rise to a claim in long-latency disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later. See Cole v. Celotex, 599 So.2d 1058, 1066 (La.1992). An accident is defined from the viewpoint of the victim; losses that were unforeseen *373 and unexpected by the victim are the result of an accident. See Gaylord Chemical Corp. v. ProPump, Inc., 98-2367, p. 6 (La. App. 1st Cir.2/18/00), 753 So.2d 349, 354. Here, under all versions of the policy, an "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and coverage is afforded when the bodily injury or property damage is "caused by an `occurrence.'"
The leakage of gasoline from the underground storage tank onto the Ricks family's property and into their residential water well was an occurrence under the policy because it was "an accident," which in this case included "continuous or repeated exposure to substantially the same general harmful conditions." And it was the continuous or repeated exposure to substantially the same general harmful conditions which caused the mental anguish that resulted in each member of the Ricks family's emotional distress (fear of cancer).
It appears that the majority attempts to carve out an exception to the recovery of bodily injury caused by an occurrence under the policy for "emotional/mental distress damages" where "the actual damage... is not the physical injury, but the emotional injury that comes from knowledge of the physical injury," without citing legal authority for its position. The majority's novel approach at fashioning an unwritten exclusion to the policy is a dangerous effort which creates new insurance law. It is well-settled that plaintiffs may recover emotional distress damages in the absence of physical injury when they prove that their claim is not spurious, which is accomplished by showing a particular likelihood of genuine and serious mental distress arising from special circumstances. Bonnette v. Conoco, Inc., 2001-2767, p. 24 (La.1/28/03), 837 So.2d 1219, 1235 (citing Moresi v. State, Dep't of Wildlife & Fisheries, 567 So.2d 1081 (La.1990)).
When causation and credibility are major issues, a factfinder's findings are entitled to "great deference," and may not be overturned unless they are manifestly erroneous. Guillory v. Insurance Co. of North America, 96-1084, p. (La.4/8/97), 692 So.2d 1029, 1032. In this case, the trial court factually determined that the emotional distress (fear of cancer) that each of the Ricks family members suffered was genuine and serious. These findings of fact are supported by the evidence and, therefore, are not manifestly erroneous.
In light of the trial court's factual conclusion that the Ricks family's emotional distress claims of fear of cancer are genuine and serious, which is supported by the evidence, under the plain language of the policy, there is coverage. I would affirm the trial court's awards in favor of the Ricks family and, therefore, dissent from that portion of the majority's opinion which holds to the contrary.
NOTES
[1] The petition and other pleadings in this matter incorrectly identify Rita Ricks' middle name as "Jane," but it is actually "Jean." Further, by the time this matter came to trial, Jennifer Ricks had reached the age of majority and therefore appears in these proceedings in her own right.
[2] Leo Ricks is referred to by name and is not included in references to "the Rickses."
[3] See La. R.S. 22:1269.
[4] This is the second appeal of these consolidated cases. In the first appeal, this court vacated the trial court's judgment and dismissed the appeal for lack of subject matter jurisdiction. Ricks v. Kentwood Oil Company, Inc., 07-2445 (La.App. 1st Cir.9/9/08), 2008 WL 4148054 (unpublished). The trial court then rendered a new judgment, in proper form, which is the subject of this appeal.
[5] For example, the Rickses filed a fifth supplemental and amending petition in February 2006, adding the Louisiana Department of Environmental Quality as a defendant. The document bears the caption and docket number of their suit, but does not reference Leo Ricks' suit.
[6] According to the policies, "Supplementary PaymentsCoverages A and B" covers expenses related to bail bonds, bonds to release attachments, reasonable expenses to assist in the investigation or defense of a claim, costs taxed against the insured in a suit, pre judgment interest awarded against the insured, and interest on the full amount of any judgment.
[7] The Rickses rely on Johnson v. Orleans Parish School Board, 06-1223, pp. 22-23 (La. App 4th Cir. 1/30/08), 975 So.2d 698, 714, writs denied, 08-0607, 08-0664 and 08-0671 (La.6/27/08), 983 So.2d 1289, as support for the trial court's judgment in this matter. We, however, decline to follow the reasoning of the court in that case as it appears to improperly rely on the Louisiana Supreme Court's holding in Cole. As previously discussed, the Cole case dealt with a claim of physical, not emotional, injuries. Further, the Court in Cole expressly observed that its holding was supported by the fact that the policy at issue did "not place any restrictions on when the damages must occur for coverage to arise." Cole, 599 So.2d at 1076-77. Such is not the case in matter at hand (nor in the Johnson case), as the USF & G policies expressly mandated that the bodily injury had to occur during the policy period for there to be coverage.
[8] Based on our decision regarding USF & G's fifth assignment of error, we pretermit discussion of the remaining assignments of error asserted by USF & G.