STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-251 c/w 14-322, 14-323

OMNI ENERGY SERVICES CORP.

VERSUS

ROBERT H. RHYNE, JR., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-3396
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.

WRIT DENIED.

David M. Kaufman
P. O. Box 4604
Lafayette, LA 70502-4604
(337) 233-2417
COUNSEL FOR DEFENDANTS/PLAINTIFFS-IN-
RECONVENTION/APPELLANTS:
    Robert H. Rhyne, Jr.
    Brent Trauth

Andre F. Toce
The Toce Firm, PLC
P. O. Box 158
Broussard, LA 70518
(337) 233-6818
COUNSEL FOR DEFENDANTS/PLAINTIFFS-IN-
RECONVENTION/APPELLANTS:
     Brent Trauth
     Robert H. Rhyne, Jr.

Alan K. Breaud
Timothy W. Basden
Breaud & Meyers, APLC
P.O. Box 3448
Lafayette, LA 70503
(337) 266-2200
COUNSEL FOR PLAINTIFF/DEFENDANT-IN
RECONVENTION/APPELLEE:
     OMNI Energy Services Corporation

Robert J. Burns, Jr.
2141 Quail Run Drive
Baton Rouge, LA 70808
(225) 767-7730
COUNSEL FOR DEFENDANT-IN-RECONVENTION/APPELLEE:
     XL Specialty Casualty Company

David M. Thorguson
Bourgeois Thorguson, LLC
P. O. Box 3006
Morgan City, LA 70381
(985) 384-2055
COUNSEL FOR DEFENDANTS-IN-RECONVENTION/APPELLEES:
     Edward E. Colson, III
     James C. Eckert
     Richard C. White
     Barry E. Kaufman
     Dennis R. Sciotto
     Ronald E. Gerevas
     Brian J. Recatto

Randy P. Angelle
Boyer, Hebert, Abels & Angelle, LLC
401 East Mills Avenue
Breaux Bridge, LA 70517
(337) 366-8285
COUNSEL FOR DEFENDANTS-IN-RECONVENTION/APPELLEES:
     Edward E. Colson, III
     Dennis R. Sciotto
     Ronald E. Gerevas

**PETERS, J.**

In these three consolidated suits, Robert H. Rhyne, Jr. and Brent Trauth seek both supervisory writ and appellate relief from this court. In their application for supervisory writs, they seek a judgment ordering that the suits consolidated at the trial level be merged into one suit. In their appeal, they request that this court reverse a trial court judgment granting peremptory exceptions of no cause of action, whereby their monetary claims against a number of other parties to this litigation were dismissed. We will consider the issues raised in these filings in separate opinions. This opinion addresses the application for supervisory writs, and we render judgment denying that request for relief.

### DISCUSSION OF THE RECORD

The procedural history of this litigation is both extensive and complicated, involving overlapping litigation in the Federal District Court for the Western District of Louisiana, as well as state court litigation in Iberia, St. Martin, and Lafayette Parishes. However, the underlying contractual agreement giving rise to this litigation is not in dispute.

In 2005, OMNI Energy Services Corporation (OMNI) purchased Preheat, Inc. (Preheat), an oilfield service company, by purchasing all of the shares of Preheat stock from Robert H. Rhyne, Jr. and Brent Trauth (hereinafter referred to as "Rhyne and Trauth"), the operators and sole shareholders of that corporation. The terms of the purchase are outlined in a December 29, 2005 document entitled "Stock Purchase and Sales Agreement" (hereinafter referred to as "the Agreement"), which provides an aggregate purchase price of $21,700,000.00 and an assumption by OMNI of certain long term obligations of Preheat totaling $1,868,000.00. OMNI was to satisfy the aggregate purchase price by paying Rhyne and Trauth $16,000,000.00 and issuing them two promissory notes having a

total face value of $3,200,000.00 [1] on the date of closing of the transaction; delivering to Rhyne and Trauth 900,000 shares of OMNI stock within thirty days of the closing date of the transaction; and establishing an $800,000.00 escrow account for the retention of certain key Preheat employees. [2]

The Agreement also provided that Rhyne and Trauth would continue to operate Preheat as OMNI employees, and the conditions of employment were set forth in individual employment/noncompetition agreements corresponding to a form attached to the Agreement, which Rhyne and Trauth both individually executed. Among the provisions of these employment/noncompetition agreements is a provision for an initial employment period through December 31, 2007, with an extension of the employment period for an additional one year from January 1, 2008. [3] With regard to termination or non-renewal of employment, the employment/noncompetition agreements provide the following:

> 6.  Termination or Non-Renewal of Employment.
>
> (a)  *Termination by Preheat Without Cause.* Preheat may terminate Employee's employment hereunder at any time during the term of this Agreement Without Cause by delivery of thirty (30) days prior written notice by Preheat to employee. After such termination of employment, Preheat shall pay: (i) the Annual Base Salary then in effect in semi-monthly payments and in accordance with Preheat's normal payroll practices for the remainder of the Initial Period if Employee is terminated during the Initial Period, and (ii) vacation pay earned during the current year but not taken to the date of such termination. Upon termination of Employee's employment hereunder, Employee shall be deemed to have resigned from all

---

[1] One of the two notes was for $2,666,666.66 payable in twenty-four months, and the other was for $533,333.34 payable in thirty-six months. Both bore interest at the rate of five percent per annum, and both were made payable to both Rhyne and Trauth.

[2] The escrow account was secured by an $800,000.00 promissory note executed by OMNI and made payable to the escrow account.

[3] On the one hand, the employment/noncompetition agreements state that the employment period will be "automatically extended," yet, on the other, they state that the extension is "at the option of Preheat."

offices, directorships, and committee positions then held with Preheat, OMNI or any Affiliate.

(b) *Termination by Employee.* Employee may terminate Employee's employment hereunder at any time during the term of this Agreement by delivery of thirty (30) days prior written notice by Employee to Preheat. Promptly after such termination of employment, Preheat shall pay to Employee an amount equal to the sum of: (i) Employee's earned but unpaid Annual Base Salary through the date of termination of employment at the rate in effect at the time of such termination, and (ii) vacation pay earned during the current year but not taken to the date of such termination. Upon termination of Employee's employment hereunder, Employee shall be deemed to have resigned from all offices, directorships, and committee positions then held with Preheat, OMNI or any Affiliate.

(c) *Termination for Cause.* If Preheat terminates Employee's employment for Cause (as defined in Exhibit A attached hereto) (by delivering written notice of termination setting forth the event or events constituting Cause and the effective date of such termination) the payments due to Employee shall be limited to the amounts described in Section 6(b)(i) and (ii). Upon termination of Employee's employment hereunder, Employee shall be deemed to have resigned from all offices, directorships, and committee positions then held with Preheat, OMNI or any Affiliate.

(d) *Non-Renewal of Employment.* Preheat may elect not to continue Employee's employment hereunder beyond the end of the Initial Period by delivery of thirty (30) calendar days prior written notice to the Employee. At the expiration of the employment term, pursuant to this subparagraph, Preheat shall pay to Employee an amount equal to the sum of: (i) Employee's earned but unpaid Annual Base Salary through the date of termination of employment at the rate then in effect, and (ii) vacation pay earned during the current year but not taken to the date of such termination. Upon termination of Employee's employment hereunder, Employee shall be deemed to have resigned from all offices, directorships, and committee positions then held with Preheat, OMNI or any Affiliate.

(e) *Waiver of Claims.* In the event this Agreement is terminated by Preheat without Cause, Employee agrees to accept, in full settlement of any and all claims, losses, damages and other demands that Employee may have arising out of such termination or non-renewal, as liquidated damages and not as a penalty, the payments, benefits and vesting of rights set forth in this Agreement. Employee hereby waives any and all rights Employee may have to bring any cause of action or proceeding contesting any such termination or non-renewal; provided, however, that such waiver shall not be deemed to affect Employee's rights to enforce any other obligations of Preheat or OMNI unrelated to employment. Under no

circumstances shall Employee be entitled to any compensation or confirmation of any benefits under this Agreement for any period of time following Employee's date of termination if Employee's termination is for Cause.

(f) *Death.* If Employee dies during his employment by Preheat under this Agreement, (i) the Employee's employment will terminate on the date of his death, (ii) Preheat will pay to Employee's estate the remainder of Employee's Annual Base Salary at the rate then in effect through the end of the month following the month in which such death occurred, and (iii) Employee's estate shall be entitled to all rights and benefits that Employee may have under the terms of Preheat's and OMNI's Employee Benefit Plans, and Stock Incentive Plan.

(g) *Disability.* If Employee becomes disabled during his employment by Preheat as the result of a Disability, (i) the Employee's employment will terminate on the date of his Disability, (ii) Preheat will pay to Employee the remainder of Employee's Annual Base Salary at the rate then in affect through the end of the month following the month in which such Disability occurred, and (iii) Employee shall be entitled to all rights and benefits that Employee may have under the terms of Preheat's and OMNI's Employee Benefit Plans and Stock Incentive Plans.

With regard to disputes arising within the employment relationship, Section 10 of the employment/noncompetition agreement provides the following:

Any controversy or claim arising out of or relating to this Agreement shall be submitted to and settled by arbitration administered by the American Arbitration Association under its National Rules for Resolution of Employment Disputes and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. This provision shall not preclude either party from seeking temporary injunctive relief from a court of competent jurisdiction to enforce the provisions of Sections 7, 8, or 9 of this Agreement.[4]

Of significant importance to this litigation is the fact that while the employment/noncompetition agreements do not mention the three promissory notes executed under the terms of the Agreement, that document tied the ultimate payment of all three to Rhyne's and Trauth's continued operation of Preheat as

---

[4] Section 7 of the employment/noncompetition agreements addressed the covenant not to compete; Section 8 addressed the use or misuse of confidential information; and Section 9 addressed the use or misuse of intellectual property.

4

OMNI employees. Under the terms of the Agreement, the two promissory notes made payable to Rhyne and Trauth would not be honored if either man resigned his employment with Preheat or if either man's employment was terminated for cause before the maturity date of the individual notes. In either event, both men would "forfeit any and all rights to the remaining unpaid balance." A similar provision in the Agreement applied to the payment of the $800,000.00 promissory note. The escrow agreement provided that certain named employees would receive a specific lump-sum payment if he or she remained with Preheat under the OMNI umbrella for a period of thirty-six months from the date of closing of the Agreement. However, it provided that if the employee resigned his or her position or was discharged for cause before the thirty-six month anniversary, his or her share due under the escrow agreement would be paid to Rhyne and Trauth *unless* either man had his left employment voluntarily or his employment had been terminated for cause before that time. In either event, the funds that would have gone to the employee covered by the escrow agreement would revert to OMNI instead of to Rhyne and Trauth.

Another significance difference between the employment/noncompetition agreements and the Agreement is the dispute resolution process provided by each. While the employment/noncompetition agreements provided for arbitration to resolve disputes arising pursuant to their terms, the Agreement provided that litigation would be the vehicle for dispute resolution for disputes arising under its terms, and further included a choice of law and choice of forum provision. Article 8.7 of the Agreement reads as follows:

> **Choice of Forum; Consent to Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. Any suit, action or proceeding arising with respect to the validity, construction, enforcement or interpretation of this

Agreement, and all issues relating in any matter hereto, shall be brought in the United States District Court for the Western District of Louisiana, or in the event that federal jurisdiction does not pertain, in the state courts of the State of Louisiana in Lafayette Parish. Each of the parties hereto hereby submits and consents to the jurisdiction of such courts for the purpose of any such suit, action or proceeding and hereby irrevocably waives (a) any objection which any of them may now or hereafter have to the laying of venue in such courts, and (b) any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

Representations and warranties provided to OMNI by Rhyne and Trauth, as Preheat's sole shareholders, comprised a significant part of the Agreement as well. These included assertions by Rhyne and Trauth concerning the financial status of Preheat; ownership of accounts, goods, and equipment; and the general history of the corporation. In the Agreement, Rhyne and Trauth did not mention any pending litigation although at the time of the sale Preheat was a defendant in a suit brought by Monosep Water Systems, L.L.C. (hereinafter referred to as "Monosep/Siemens" [5]) wherein Monosep/Siemens claimed that Preheat had misappropriated its proprietary reverse-osmosis-desalination technology. Still, it is not disputed that Rhyne and Trauth disclosed the existence of this litigation to OMNI before consummation of the sale.

OMNI executed the three promissory notes on February 9, 2006, and the sale itself was finalized on February 17, 2006. OMNI then delivered the common stock to Rhyne and Trauth within thirty days of the closing date as required by the Agreement. Subsequent to February 17, 2006, OMNI was substituted as defendant in the Monosep/Siemens litigation.

The Monosep/Siemens suit continued to move toward resolution, and, on February 8, 2007, OMNI notified Rhyme and Trauth that it reserved its right,

---

[5] We use this reference to identify Monosep Water Systems, L.L.C. because, subsequent to the purchase of Preheat by OMNI, Siemens Water Technologies Corporation became the successor in interest to that legal entity.

6

pursuant to the Agreement, to seek indemnification from them for any costs it might incur for a number of matters not fully disclosed at the time of the sale, including the pending Monosep/Siemens litigation. Exactly one year later, on February 8, 2008, and before any judgment was rendered in the Monosep/Siemens litigation, James C. Eckert, OMNI's president and CEO, hand-delivered a letter to Rhyne, informing him that his employment with OMNI was being terminated effective immediately. The letter stated, in pertinent part:

> Pursuant to Paragraph 6(c) of your Employment Agreement[6] with Preheat, Inc., allow this letter to serve as notice of termination of your employment, effective immediately. The basis for this decision is your behavior and conduct which, in the judgment of the Board of Directors, has been detrimental to and harms the business reputation of Preheat and OMNI, as well as your engagement with another entity, specifically, Redhawk Capital, LLC.
>
> Also, allow this letter to serve as notice that you no longer have the authority to act on behalf of OMNI or Preheat, and that OMNI reserves all rights it has under its various agreements with you.
>
> It is unfortunate that our relationship will end on these terms, but we do wish you the best in your future endeavors.

Not only was the termination letter dated and delivered to Rhyne one year to the date after OMNI notified Rhyne and Trauth of its indemnification claims, but it was delivered one day before the February 9, 2006 $2,666,666.66 promissory note was to become payable to the two men.

Eckert followed this action by hand-delivering a May 9, 2008 letter to Trauth informing him that OMNI was also terminating his employment based, not on cause, but on his purported resignation from his position. The letter stated, in pertinent part:

> On or before April 30, 2008, you cleaned out your office at OMNI and Preheat. Since that date, you have failed to work at all on behalf of the company. Therefore, allow this letter to confirm that you have

---

[6] As previously noted, Paragraph 6(c) of the employment/noncompetition agreement provides the authority for OMNI to terminate Rhyne's employment for cause.

abandoned your job with OMNI and Preheat, which we construe as a resignation under paragraph 6(b) of your Employment Agreement. Your formal separation paperwork, including your final paycheck, will be sent under separate cover.

Using the argument that it had discharged Rhyne for cause and that Trauth had voluntarily left its employment, OMNI did not pay them the amounts represented by the two promissory notes upon their maturity.

The Monosep/Siemens suit went to trial in March of 2008, and, on April 24, 2008,[7] Monosep/Siemens obtained a $3,045,133.50 judgment against OMNI based on its claims against Preheat. Thereafter, OMNI settled the matter with Monosep/Siemens by paying it $3,122,286.00, transferring all of the reverse-osmosis units in its possession to Monosep/Siemens, and by executing a two-year non-competition agreement in favor of Monosep/Siemens.[8]

It is from this background that the litigation now before us began. While the issues before us arise from litigation in Lafayette Parish, the foundation of that litigation involves six separate filings. Additionally, although the issues before us relate to one small aspect of the overall litigation, it is necessary to address the entire litigation history for a full understanding of the current issues, and we will do so in increments. For purposes of clarity, we will identify the separate suits as "Federal Suit I," "Lafayette Parish Suit I," "Iberia Parish Suit," "St. Martin Parish Suit," "Federal Suit II," and "Lafayette Parish Suit II."

---

[7] The trial court signed the judgment on April 24, 2008, but it was not filed until April 28, 2008.

[8] This settlement was reached on June 10, 2008, and, on August 1, 2008, Monosep/Siemens executed a satisfaction of judgment acknowledging that the April 24, 2008 judgment had been paid.

*Federal Suit I*

Rhyne and Trauth filed the first of the suits in the Federal District Court for the Western District of Louisiana on May 1, 2008 (Federal Suit I). In this suit, they named OMNI; seven of OMNI's officers/directors (Dennis R. Sciotto; Edward E. Colson, III; Richard C. White; Barry E. Kaufman; Ronald E. Gerevas; Brian J. Recatto; and Ronald D. Mogel); and two additional parties (Richard Adam "Rick" Mager and Cove Partners, L.L.C.) as defendants. They sought relief from these defendants under a number of causes of action,[9] but on June 23, 2009, the federal court rendered judgment dismissing all of their federal claims for failure to state a cause of action and dismissing all of their state law claims "WITHOUT PREJUDICE to their reassertion in an appropriate state court." *Rhyne v. OMNI Energy Servs. Corp.*, No. 08-CV-00594, 2009 WL 1844474, at * 19 (M.D. La. June 23, 2009).

*Lafayette Parish Suit I*

On June 5, 2009, or less than three weeks before the dismissal of Federal Suit I, OMNI filed suit in Lafayette Parish (Lafayette Parish Suit I). In that suit, OMNI named Rhyne and Trauth as defendants and sought a monetary judgment for damages based on breach of contract, fraudulent inducement to contract, misrepresentation, unfair trade practices, tortious interference with contract, and negligence stemming from their failure to fully disclose the nature of the lawsuit filed by Monosep/Seimens. Seven months later, OMNI amended its petition to add

---

[9] These included a request for a judgment declaring the nullity of the Agreement and recognizing Rhyne's rights to employee benefits under the Employment Retirement Income Security Act; an injunction against the defendants' continuing violations of the Securities Exchange Act of 1934 and various U.S. Securities and Exchange Commission regulations; and damages for the defendants' nullification of or bad faith breach of the Agreement, their default on the promissory notes, the diminished value of Rhyne and Trauth's OMNI shares; and the defendants' failure to prudently manage Preheat and the resulting decrease in its value.

claims for misrepresentation in the sale of securities, indemnity, breach of fiduciary duties, and for a judgment declaring that Rhyne's termination for cause was justified such that OMNI had no further compensation obligations to the two defendants under the Agreement. Rhyne and Trauth responded to this suit by filing numerous exceptions and a motion for summary judgment. These were still pending when the next suit was filed.

### *Iberia Parish Suit*

On November 12, 2009, or approximately four months after the dismissal of Federal Suit I and approximately five months following the institution of Lafayette Parish Suit I, Rhyne and Trauth filed suit in Iberia Parish (Iberia Parish Suit), seeking a judgment declaring the Agreement a nullity based on a failure of the Agreement to name "a determinable, legal price[,]" and a judgment for damages caused by the nullity of the Agreement, as defined in several alternative theories. Rhyne and Trauth named as defendants the same parties they had sued in Federal Suit I: OMNI; the seven officers/directors (Sciotto, Colson, Eckert, White, Kaufman, Gerevas, and Recatto); and Mager; and Cove Partners L.L.C. (Cove Partners). Additionally, they named Zurich American Insurance Company (Zurich American); XL Specialty Insurance Company (XL Specialty); American International Group, Inc. (AIG); and Liberty Mutual Group, Inc. (Liberty Mutual) as defendants in this suit. As was the case with Federal Suit I, this litigation did not get past the preliminary phase because the trial court granted the defendants' declinatory exception of improper venue filed pursuant to La.Code Civ.P. art. 925(A)(4) and dismissed all of the defendants from the litigation. The trial court executed a judgment to this effect on April 27, 2010. In its April 7, 2010 reasons for judgment, the trial court concluded that Rhyne and Trauth were bound by the

forum-selection language of Article 8.7 of the Agreement, because all of the claims for relief were related to the Agreement.

### *St. Martin Parish Suit*

Rhyne and Trauth did not seek appellate review of the decision in the Iberia Parish Suit. Instead, on May 6, 2010, or less than one month after the dismissal of the Iberia Parish Suit and with Lafayette Parish Suit I still pending, Rhyne and Trauth filed suit in St. Martin Parish (St. Martin Parish Suit) naming the same defendants they had named in the previous two filings, alleging the same facts, and seeking the same relief as in the Iberia Parish Suit.[10] In response, the defendants filed exceptions of improper venue, improper cumulation of actions, lis pendens, and res judicata.

On September 14, 2010, and before a hearing on these exceptions could be held, Rhyne and Trauth supplemented their petition by requesting damages from the defendants based on, among other claims of misconduct by the individual defendants, a claim that their respective employment contracts, created pursuant to the Agreement, had been breached by the intentional acts of Sciotto, Colson, and Gerevas.[11] Additionally, they specifically asserted that venue was correct in St. Martin Parish because Rhyne was domiciled in St. Martin Parish; some of the negotiations over the Agreement occurred in St. Martin Parish, as did some of the obligations under the terms of the Agreement; and that the choice of forum provision of the Agreement was not enforceable because of the provisions of La.R.S. 23:921.

---

[10] On February 8, 2011, the trial court signed a judgment dismissing all of Rhyne/Trauth's claims against Liberty Mutual without prejudice.

[11] The supplemental petition suggests that the remaining directors "did not intentionally harm them, but "breached their duty as directors."

The exceptions came to trial at a December 8, 2010 hearing, and, on April 11, 2011, the trial court filed its written reasons for judgment, wherein it recognized the existence of Lafayette Parish Suit I and stated the following concerning the analysis of the issues then before it:[12]

> In this case, the previously filed suit in Lafayette will determine whether any obligations created by the [Agreement] were breached and whether Rhyne was terminated for cause and therefore, properly terminated and whether Trauth's resignation extinguished any obligation on the part of OMNI to pay any additional amounts under the [Agreement]. Plaintiff's[sic] claim in the St. Martin Parish case, seeks a determination that the firing was improper and additional money is owed; the same claim being litigated in Lafayette Parish. Therefore, the Court finds that a final judgment on the Lafayette suit would be res judicata in the subsequently filed St. Martin suit.

> However, the suit filed in St. Martin also named as defendants the individual board of directors of OMNI, their insurance companies, and Richard Mager and Cove Partners. These individuals are not named parties in the suit in Lafayette. The allegations against the individuals serving on the OMNI Board of Directors, in part, stem from their duties and responsibilities as a board member, such as failure to exercise due diligence, failure to disclose all material facts, breached warranties that disclosures were true and accurate, etc. When a party seeks dismissal of a suit on an exception of lis pendens he must prove that the suits are pending between the same parties in the same capacities. This requirement is called the identity of parties. Case law does not demand that the parties in the two lawsuits be physically identical, but the parties must share the same "qualities." Welch v. Crown Zellerbach Corp., 350 So.2d 154 (La. 1978). So when the identities are virtually merged into one, the parties are the same for the purposes of lis pendens. Louisiana Cotton Assn. Workers' Compensation Group Self-Insurance Fund v. Tri-Parish Gin Co., Inc.,[sic] 624 So.2d 461 (La. Ct. App. 2d Cir. 1993). *In the case of Recatto, Kaufman, Eckert and White, the Court finds that since they were sued only in their capacity as a board member, their identity is virtually merged with that of OMNI for the purposes of lis pendens. The Court also finds that since the [Agreement] provides for venue in Lafayette, the Court grants the Exception of Improper Venue in as far as the action against OMNI and the Board of Directors.*

> However, *the other board members, Dennis Sciotto, Edward Colson, and Ronald Gerevas were sued* by the plaintiffs in St. Martin Parish in their capacity as a member of the board of directors and *on allegations outside the scope of the suit filed in Lafayette. Lis*

_____
[12] The reasons for judgment were actually executed by the trial court on Aril 8, 2011, but were not filed of record until April 11, 2008.

*Pendens is appropriate for the claims stemming from their actions within the authority of being on the Board of Directors.* However, they were also sued on a variety of intentional acts, such as fraud, illegal deception, intentional misrepresentation, conspiracy, etc. Additionally, Richard Mager and Cove Partners, who were not on the Board of Directors but had business dealings with Rhyne and Traunt [sic], were not named in the Lafayette lawsuit. The Court notes that Rhyne and Traunt [sic] have made allegations against these defendants involving actions outside the scope of the [Agreement]. CCP 531 requires that lis pendens is appropriate not only when the parties are the same in both lawsuits but also the transaction or occurrence must be the same.

The Court finds that Defendants Mager, Cove Partners, Sciotto, Colson and Gerevas have not met their burden of proof that Lis Pendens is appropriate on the allegations pled in the suit filed in St. Martin Parish. Some of the allegations not only do not arise from the same occurrence but also the requirement that the parties are the same and in the same capacity has not been met. Therefore, the exception of Lis Pendens is denied for Mager and Cove Partners. The Lis Pendens is also denied as to Sciotto, Colson, and Gerevas but only as to the allegations which took place outside their duties as a member of the Board of Directors of OMNI.

(Emphasis added.)

The judgment filed by the trial court on April 27, 2011,[13] and recorded on April 27, 2011, had the effect of leaving only Mager, Cove Partners,[14] Sciotto, Colson, and Gerevas in the St. Martin Parish Suit, with the liability of the latter three arising from acts or omissions occurring outside their duties as OMNI directors. All of the other defendants were dismissed from the litigation without prejudice based on both the lis pendens and venue exceptions.

### *Federal Suit II*

After the trial court executed its judgment in the St. Martin Parish Suit, but before the expiration of the delays for requesting a new trial, on May 6, 2011, Mager and Cove Partners obtained an order removing the St. Martin Parish Suit to

---

[13] The judgment had been executed by the trial court the previous day, April 26, 2011.

[14] At this point in time, neither Mager nor Cove Partners were parties to Lafayette Parish Suit I, which was the basis of the grant of lis pendens in favor of OMNI.

the Federal District Court for the Western District of Louisiana (Federal Suit II). It remained in federal court for approximately one year and then, on May 4, 2012, was returned to the trial court in St. Martin Parish by order of the federal magistrate judge. During that time, no action was taken by the federal court toward resolving the remaining issues in the litigation.

### *Lafayette Parish Suit I*

The Lafayette Parish litigation had generally lain dormant as the parties litigated in Iberia Parish, St. Martin Parish, and federal court. As previously stated, Rhyne and Trauth had responded to OMNI's suit in Lafayette Parish by filing numerous exceptions and a motion for summary judgment. Following hearings on these preliminary matters, the trial court rendered two judgments, both on March 21, 2011. In the first, the trial court partially granted Rhyne and Trauth's motion for summary judgment by dismissing all of OMNI's tort claims, finding that they had prescribed. In the second, the trial court denied their exception of prescription addressing OMNI's indemnity claim, as well as their exception of no cause of action addressing OMNI's request for declaratory judgment. Both this court and the supreme court rejected applications for supervisory writs filed by Rhyne and Trauth, wherein they questioned the trial court's rejection of their exception of no cause of action. *OMNI Energy Servs. Corp. v. Rhyne*, 11-397 (La.App. 3 Cir. 8/22/11) (unpublished writ); *MONI* [sic] *Energy Servs. Corp. v. Rhyne*, 11-1937 (La. 11/14/11), 75 So.3d 944. Thus, at this point in the Lafayette litigation, all of OMNI's claims against Rhyne and Trauth remained viable except those arising in tort.

Thereafter, Rhyne and Trauth sought a summary judgment dismissing OMNI's contractual indemnification claim on three grounds: 1) OMNI was aware

14

of the Monosep/Siemens suit prior to its purchase of Preheat; 2) the Agreement provides that they cannot be held liable for any "statement, promise, intention, or inducement not reduced to writing"; and 3) in contravention of the Agreement, OMNI compromised the Monosep/Siemens suit without obtaining their prior written consent. The trial court denied this motion by written judgment signed July 18, 2011, and their subsequent supervisory writ application to this court was also denied. *OMNI Energy Servs. Corp. v. Rhyne*, 11-1048 (La.App. 3 Cir. 12/8/11) (unpublished writ).

With the preliminary filings disposed of, on April 17, 2012, Rhyne and Trauth answered OMNI's pleadings, raising a number of affirmative defenses.[15] Additionally, they filed a reconventional demand against OMNI, seeking a declaratory judgment granting the same relief they had sought in both the Iberia Parish Suit and the St. Martin Parish Suit: Nullification of the Agreement for lack of a determinable, legal price; all damages resulting from the nullification of the Agreement; and additional damages arising from the tortious and bad faith breach of their employment contracts with OMNI. The reconventional demand also named as defendants-in-reconvention[16] the same defendants they had sued in the St. Martin Parish Suit and asserted the same claims for relief: That Sciotto, Colson, Mager, Cove Partners, and Gerevas illegally obtained control of OMNI's board of directors and caused the board to vote to terminate their employment with OMNI in such a manner so as to preclude their recovery of the amounts due under the

---

[15] At this point in time, the court in Federal Suit II had not returned the St. Martin Parish Suit to the trial court.

[16] Although classified in the pleading as defendants-in-reconvention, these parties are actually third-party defendants. La.Code Civ.P. art. 1061; La.Code Civ.P. art. 1111.

terms of the promissory notes; and that the other directors had breached their fiduciary duties as directors in allowing this to occur.

OMNI responded to the reconventional demand by filing an exception of prescription, asserting that the wrongful-termination claims had prescribed; an exception of res judicata asserting that the federal law claims in the reconventional demand had been rejected in Federal Suit I; and an exception of no cause of action asserting that the pleadings failed to state a cause of action in the remaining claims.

Recatto, Sciotto, Colson, Eckert, White, Kaufman, and Gerevas responded by filing an exception of no cause of action, asserting that all of the claims against them were either perempted or prescribed based on La.R.S. 12:1502. XL Specialty filed exceptions of res judicata, no cause of action, and prescription for the reasons expressed by OMNI; and Mager and Cove Partners also filed exceptions of res judicata and no cause of action for the reasons expressed by OMNI.

### *St. Martin Parish Suit*

While Lafayette Parish Suit I was progressing, Federal Suit II was remanded to St. Martin Parish. Upon remand, Mager, Cove Partners, Sciotto, Colson, Gerevas, and XL Specialty sought, and obtained from the trial court, an order granting them an additional thirty days in which to file responsive pleadings to Rhyne and Trauth's petition.[17] However, instead of responding to the petition, Mager, Cove Partners, Sciotto, Colson, and Gerevas filed motions for rehearing and/or new trial addressing the trial court's denial of their exceptions of lis pendens. Sciotto, Colson, and Gerevas filed their motion on July 5, 2012, and the motion of Mager and Cove Partners followed on July 10, 2012. Rhyne and Trauth responded by filing a new trial motion of their own with regard to that portion of the trial

---

[17] The thirty days granted to Mager and Cove Partners, Sciotto, Colson, and Gerevas elapsed on July 6, 2012. The thirty days granted to XL Specialty elapsed on July 24, 2012.

16

court judgment granting relief to the defendants under the exceptions of lis pendens and improper venue. Sciotto, Colson, and Gerevas also filed new exceptions of no cause and no right of action, res judicata, prescription, and non-joinder of a party. XL Specialty filed its new trial motion on August 24, 2012; later joined Sciotto, Colson, and Gerevas in the new exceptions; and reurged its exception of lis pendens and improper venue.

Prior to the hearing on these exceptions, the litigants reached an agreement that this litigation and Lafayette Parish Suit I were so similar that judicial efficiency and convenience to the parties would best be served by having all of the issues heard in Lafayette Parish. Based on this agreement, the trial court rendered a July 19, 2013[18] consent judgment ordering the transfer of the St. Martin Parish litigation to Lafayette Parish for consolidation with the pending Lafayette litigation. This order gave rise to Lafayette Parish Suit II.

### *Lafayette Parish Suit I*

After the May 4, 2012 remand of Federal Suit II and before the transfer of the St. Martin Parish Suit, the parties continued litigating the pending issues in Lafayette Parish Suit I. All exceptions to the claims asserted by Rhyne and Trauth in their reconventional demand were considered by the trial court at a November 19, 2012 hearing, and the trial court issued written reasons for judgment on December 21, 2012.[19] However, as will be further discussed in the opinion rendered in Consolidated Docket Number 14-322**,** on May 14, 2013, the trial court

---

[18] Although the consent judgment bears a stamped date of July 13, 2013, it was signed by the trial court on July 19, 2013.

[19] The Reasons for Judgment were executed by the trial court on December 19, 2012, but not filed until December 21, 2012.

executed a judgment which does not appear to correspond to the December 21, 2012 reasons for judgment.

After the November 19, 2012 hearing, and four days before the trial court rendered its December 21, 2012 reasons for judgment, Rhyne and Trauth filed a supplemental answer and reconventional demand asserting the same basic facts as previously set forth in the previously filed pleadings, but adding Gibson Energy, Inc. (Gibson Energy) as a defendant-in-reconvention, asserting that it was the successor in interest to OMNI,[20] and adding as new claims for recovery the assertion that OMNI and Gibson Energy were liable to them for damages caused by the actions of the director/officer defendants based on both agency and respondeat superior.

On January 24, 2013, Recatto, Sciotto, Colson, Eckert, White, Kaufman, and Gerevas responded to the December 17, 2012 pleading by filing an exception of no cause of action based on peremption and/or prescription. On February 25, 2013, Mager and Cove Partners responded to this pleading by filing a motion to dismiss any and all claims that might have been asserted against them in the supplemental reconventional demand. The next day, the trial court granted their motion.[21]

The January 24, 2013 exceptions were still pending when the trial court executed the May 14, 2013 judgment. Twenty days later, on June 3, 2013, Rhyne and Trauth filed an exception of prescription addressing claims raised by OMNI in

---

[20] Gibson Energy, Inc. was identified in this pleading as the successor-in-interest of OMNI. Additionally, as was the case in their original response to OMNI's suit, Rhyne and Trauth identified all of the defendants as defendants-in-reconvention rather than recognizing that some were third-party defendants.

[21] On September 18, 2013, Mager and Cove Partners filed a second ex parte motion requesting that they be dismissed as party defendants in the litigation and asserting that Rhyne and Trauth did not oppose the motion. On that same day, the trial court executed an order dismissing them from the litigation completely.

18

its first supplemental and amending petition. Specifically, Rhyne and Trauth asserted that all of OMNI's claims in the original petition had been denied by a final judgment arising from the January 18, 2011 hearing and that the new claims could not relate back to a claim not timely asserted. On that same day,[22] Rhyne and Trauth filed a motion for new trial addressing the correctness of that portion of the trial court's May 14, 2013 judgment granting the director/officer defendants' exception of prescription.

### *Lafayette Parish Suit II*

On July 24, 2013, the parties filed the July 19, 2013 St. Martin Parish Suit consent judgment in the Lafayette Parish Clerk of Court's office. Instead of consolidating the transferred suit with Lafayette Parish Suit I, the Lafayette Parish Clerk of Court assigned it to Division G, a separate division of the Fifteen Judicial District Court from Division F where Lafayette Parish Suit I was pending. Finally, on November 12, 2013, Sciotto and Colson[23] moved to consolidate Lafayette Parish Suit II with the pending litigation in Division F. By a judgment executed on December 6, 2013, the trial court ordered consolidation of the former St. Martin Parish Suit with Lafayette Parish Suit I pending in Division F.

### *Lafayette Parish Suit I*

At a September 9, 2013 hearing, and before consolidation of the two Lafayette Parish suits, the trial court in Lafayette Parish Suit I considered and rejected the June 3, 2013 exception of prescription filed by Rhyne and Trauth addressing OMNI's claims as set forth in their first supplemental and amending

---

[22] The motion had been fax-filed on May 29, 2013, with the original pleading being filed on June 3, 2013.

[23] The motion states that it is on behalf of Dennis R. Sciotto, Edward E. Colson, and Edward E. Colson. The December 11, 2013 judgment states that the matter was before the trial court on the motion of Dennis R. Sciotto, Edward E. Colson, III, and Ronald E. Gerevas.

pleading.  The trial court then executed a judgment to that effect on September 20, 2013.

At that same September 9, 2013 hearing, the trial court also considered the June 3, 2013 motion for new trial filed by Rhyne and Trauth.  The November 10, 2013 judgment on this issue provides, in pertinent part, that:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for New Trial is granted, but only with regard to the alleged tortious interference claims against Dennis R. Sciotto, Edward E. Colson, III and Ronald E. Gervais [sic] currently pending in the consolidated Docket No. 2013-4316.[24]

At first glance, it appears that the trial court ruled on an issue in Lafayette Parish Suit II before the November 12, 2013 motion to consolidate was granted.  However, a review of the transcript of the September 9, 2013 hearing establishes otherwise.  At the hearing, counsel for Sciotto, Colson, and Gerevas acknowledged to the trial court that the April 26, 2011 St. Martin Parish judgment rejected their claims of lis pendens for all tort claims arising outside the scope of their duties as officers or directors of OMNI.  Finding that the pending motions addressing the correctness of that ruling were not properly before it, the trial court simply preserved the prior ruling for future consideration.

Rhyne and Trauth filed an application for supervisory writs to this court in January of 2014, raising questions concerning the consolidation of Lafayette Parish Suits I and II.  In their application for supervisory writs, Rhyne and Trauth seek review of the trial court's consolidation of the St. Martin Parish Suit and Lafayette Parish Suit I, claiming it was error for the trial court to consolidate the two suits without merging them.

---

[24] This docket number represents the number assigned by the Lafayette Parish Clerk's Office to Lafayette Parish Suit II, after its transfer from St. Martin Parish.

# OPINION

In their application for supervisory writs, Rhyne and Trauth asserted that consolidation of the two suits without the merger of the suits into one action would result in a miscarriage of justice because, as is, there exists "the possibility of duplicate work, and inconsistent rulings, in identical cases and there is no legal or logical reason to handle the identical suits as separate proceedings." We find no merit in this assertion.

With regard to the consolidation of multiple cases, La.Code Civ.P. art. 1561 provides:

> A. When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding that common issues of fact and law predominate, and, in the event a trial date has been set in a subsequently filed action, upon a finding that consolidation is in the interest of justice. The contradictory hearing may be waived upon the certification by the mover that all parties in all cases to be consolidated consent to the consolidation.

> B. Consolidation shall not be ordered if it would do any of the following:

> (1) Cause jury confusion.

> (2) Prevent a fair and impartial trial.

> (3) Give one party an undue advantage.

> (4) Prejudice the rights of any party.

Furthermore, the supreme court has stated that consolidation pursuant to La.Code Civ.P. art. 1561 is "a procedural device which allows a trial court to deal with similar issues of law or fact in one trial; it does not merge the parties, affect the running of delays, or authorize consolidation of judgments or appeals." *Davis v. Am. Home Prods. Corp.*, 95-1035, p. 1 (La. 5/19/95), 654 So.2d 681, 681. Although there are cases which state that a consolidation of actions does not act to

21

merge two cases into one unless the records clearly reflects an intention to do so, we have found no authority for such a rule. *Ricks v. Kentwood Oil Co., Inc.*, 09-677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363, *writ denied*, 10-1733 (La. 10/15/10), 45 So.3d 1112; *Johnson v. Shafor*, 08-2145 (La.App. 1 Cir. 7/29/09), 22 So.3d 935, *writ denied*, 09-1921 (La. 11/20/09), 25 So.3d 812.

Additionally, as previously noted, the only issues remaining in the St. Martin Suit, when it was transferred to Lafayette Parish, were those related to the alleged intentional acts of Sciotto, Colson, and Gerevas which occurred outside the scope of their authority as directors of OMNI. By virtue of the November 10, 2013 judgment on the motion for new trial filed by Rhyne and Trauth, these are currently pending before the trial court in the consolidated Lafayette Parish suits. Accordingly, we deny the application for supervisory writs.

## DISPOSITION

For the foregoing reasons, we deny the application for supervisory writs filed by Robert H. Rhyne, Jr. and Brent Trauth. We assess all costs of this writ application to Robert H. Rhyne, Jr. and Brent Trauth.

**WRIT DENIED.**