389 So.2d 1373 (1980)
DEUTSCH, KERRIGAN & STILES
v.
Joseph M. RAULT, Jr.
No. 11274.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1980.
Rehearing Denied November 17, 1980.
Deutsch, Kerrigan & Stiles, Stephen F. Vogel, New Orleans, for plaintiff-appellee.
Leach, Paysse & Baldwin, Richard C. Baldwin, and Ford J. Dieth, New Orleans, for defendant-appellant.
Before CHEHARDY, BARRY and SARTAIN, JJ.
BARRY, Judge.
Deutsch, Kerrigan & Stiles, a law partnership, filed suit for attorneys' fees for services rendered to Joseph M. Rault, Jr. in a federal lawsuit filed in 1970 entitled "Clay L. Shaw v. Jim Garrison, et al". The District Court entered judgment for plaintiff in the sum of $27,489.23 with legal interest from judicial demand and for costs. The defendant does not deny the legal representation but filed this appeal raising the following questions:
(1) Does the evidence prove that the legal services rendered by the plaintiff were to be charged and paid by Rault in the Shaw damage suit?
(2) If attorney fees are due to plaintiff was the amount awarded proper considering mitigating circumstances?
Appellee's answer to the appeal asked that the trial court's award of interest be modified to provide that legal interest be calculated from the date of appellee's various fee statements rather than from the date of judicial demand.
The threshold question is the factual determination if there was an expressed or *1374 implied contract for payment of the legal services. LSA-C.C. Art. 1811 provides:
The proposition as well as the assent to a contract may be express or implied:
Express when evinced by words, either written or spoken;
Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.
This scenario began in February, 1970 when Clay Shaw brought suit in Federal District Court against the Orleans District Attorney, Rault, and several other defendants. Shaw sought over $5 million for alleged violations of his civil rights as a result of his arrest and prosecution for conspiracy to assassinate President Kennedy.
Shortly after Shaw's damage suit was filed Eberhardt Deutsch, one of plaintiff's senior partners, invited several of the defendants to a luncheon meeting. Among those present were the District Attorney, Willard Robertson, Malcolm Monroe (a partner in the law firm), and appellant. Appellant testified that Deutsch stated at the luncheon meeting that services of his law firm would be rendered without pay because of his personal interest in the litigation and because of his involvement in a co-defendant organization whose purpose was to raise money to assist in the assassination investigation. Deutsch and Monroe testified that the agreement was for the defendants to each pay a percentage of the total bill for attorneys' fees.
That Rault was a co-defendant in a serious tort lawsuit involving unique law is undisputed. Nor does Rault deny the extensive legal work done or its adequacy on his behalf. It is interesting to note that in appellant's original answer he admitted his agreement to be responsible to appellee for legal fees and costs. Appellant subsequently filed a supplemental answer denying liability for any expenses.[1]
Appellee's first statement for legal services was rendered approximately two years after the Shaw litigation began. A total of six bills were submitted to Rault up to January, 1977 as follows:

January 17, 1972 $11,790.88
May 23, 1973 4,063.25
August 5, 1974 210.00
January 17, 1975 5,015.37
July 18, 1975 5,705.94
January 31, 1977 1,614.32
 __________
 $28,399.76
Contribution on Rault's
behalf by a co-defendant 910.53
 __________
 DUE $27,489.23

The legal work was rendered over a seven year period and documents in the record show that 1,769 hours of attorneys' time was billed. Plaintiff's billing was apportioned 50% to the District Attorney, 25% to Robertson and 25% to Rault. The litigation was extensive, including three appeals to the United States Fifth Circuit Court of Appeal and two petitions to the United States Supreme Court. The Highest Court eventually ruled in favor of the various defendants causing dismissal of the Shaw lawsuit and Rault's exoneration from liability.
Appellant testified that he never wrote protesting any of the six fee statements nor did he respond to letters requesting payment of past due amounts. Extensive exhibits show that Rault was constantly informed of the status of the litigation and provided copies of legal documents. Consent to an agreement can be shown by action, inaction, or silence. There is ample evidentiary proof to conclude by a preponderance the existence of an implied contract. Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App., 3rd Cir. 1974), writ denied 293 So.2d 177 (1974); Neblett v. Placid Oil Co., 257 So.2d 167 (La.App., 3rd Cir. 1972), writ denied 258 So.2d 376 (1972).
The trial judge listened to each witness and appraised the many exhibits in support of appellee's position. The lower court's determination of each witness' credibility and its evaluation of the conflicting testimony should not be disturbed in the absence *1375 of a clear abuse of discretion. Canter v. Koehring, 283 So.2d 716 (La., 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978). Our review fails to find manifest error or any abuse of discretion.
We do not find mitigating circumstances which would reduce the amount of the judgment. The trial judge was in a position to establish value for attorneys' fees based on the evidence and his own knowledge. Appellant's 25% of the total bill was $27,489.23; the 1,769 hours billed amounts to $62.00 per hour, including costs. This is a reasonable hourly charge for the type and extent of legal work expended.
The last question involves whether appellee's answer on appeal was timely filed in order to consider if the judgment should be modified to provide that legal interest commences from the date of each fee statement rendered to appellant rather than from the date of judicial demand.
LSA-C.C.P. Art. 2133 requires an answer to an appeal to be filed not later than fifteen days after the return date or the lodging of the record, whichever is later. This record consists of three volumes: two were filed January 24, 1980 and the third on April 2, 1980. Appellee's answer was filed April 7, 1980.
We interpret Art. 2133 to mean that the fifteen day period to file an answer commences after the entire record is lodged. To hold otherwise would require an appellee to answer based upon an incomplete record. A record on appeal should contain all of the proceedings and all documents filed in the trial court unless the appellant designates otherwise. LSA-C.C.P. Art. 2128. No designation was requested and the record was lodged in its entirety on April 2, 1980. Therefore, appellee's answer filed April 7, 1980 was within the provisions of LSA-C. C.P. Art. 2133.
The trial court erred in awarding legal interest from date of judicial demand. Appellee properly prayed for interest from the date each fee statement was rendered. See LSA-C.C. Art. 1938 and LSA-C.C.P. Art. 1921. We therefore amend the lower court judgment to provide that legal interest be awarded from the date of each fee statement submitted by appellee to appellant.[2] LSA-C.C.P. Art. 1921; James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App., 2nd Cir. 1974).
Accordingly, the judgment of the District Court is hereby amended to provide legal interest from the date of each fee statement until paid, and in all other respects the District Court judgment is affirmed. Appellant to pay all costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] There is evidence that the law firm had represented Rault on several other occasions, but no indication if these services were by a written or oral contract.
[2] The contribution credit of $910.53 was on 9/17/75. This credit should be deducted from the 7/18/75 statement to calculate legal interest due.