# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 14-1108


JOHN ANTHONY GUIDRY

VERSUS

BEAUREGARD ELECTRIC COOPERATIVE, INC., ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2009-939
HONORABLE RONALD F. WARE, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*

### ELIZABETH A. PICKETT
### JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.**

**Brian D. Smith**
**J. Michael Nash**
**Ungarino & Eckert, L.L.C.**
**910 Pierremont Rd, Suite 103**
**Shreveport, LA 71106**
**(318) 866-9596**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
     **Beauregard Electric Cooperative, Inc.**
     **Federated Rural Electric Insurance Exchange**

**George D. Fagan**
**Leake & Andersson, L.L.P.**
**1100 Poydras Street, Suite 1700**
**New Orleans, LA 70163**
**(504) 585-7500**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
    **Beauregard Electric Cooperative, Inc.**
    **Federated Rural Electric Insurance Exchange**

**Patrick M. Wartelle**
**Leake & Andersson, L.L.P.**
**P. O. Drawer Z**
**Lafayette, LA 70502**
**(337) 354-2427**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
    **Federated Rural Electric Insurance Corp.**
    **Beauregard Electric Cooperative,Inc.**

**Barry A. Roach**
**Christopher S. Lacombe**
**Larry A. Roach, Inc.**
**2917 Ryan Street**
**Lake Charles, LA 70601**
**(337) 433-8504**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **John Anthony Guidry**

**PICKETT, Judge.**

This matter arises from an accident that occurred when some part of a loaded utility trailer being pulled by John Guidry came into contact with an electric line owned and maintained by Beauregard Electric Cooperative, Inc. Beauregard and Federated Rural Electric Insurance Exchange, Beauregard's insurer, (jointly referred to hereinafter as BECi) appealed the judgment awarded against them, and Mr. Guidry filed an answer to the appeal. For the reasons discussed below, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On October 12, 2013, at approximately 11:30 p.m., Mr. Guidry and a friend, Karen Gorum, went to property situated in Edgerly off West Houston River Road that Mr. Guidry hoped to purchase. Prior to that day, Mr. Guidry had delivered various pieces of equipment to the property and installed a utility pole with a meter box on it. After learning that not all of the property owners were in agreement to sell the property, he went to retrieve his equipment and utility pole.

Upon arrival at the property, Mr. Guidry loaded the sixteen foot long utility trailer he used to transport his equipment, including the utility pole. Mr. Guidry described how he loaded the trailer as follows: (1) box blade on the front right side of the trailer; (2) yellow scoop on the front left side of the trailer; (3) removed the utility pole from the ground with a gin pole attached to his John Deere 990 four-wheel drive tractor, then backed the tractor onto the trailer while dragging the utility pole under the tractor; and (4) dropped the utility pole where it missed the back tailgate and the cab of the truck. Mr. Guidry testified that when loading the utility pole on the trailer, he wedged the utility pole under the tractor and against

the box blade in such a manner that the utility pole would not move. He then explained that he secured all the equipment and utility pole on the trailer with binders and chains to prevent them from moving while he was in transit. Ms. Gorum remained in the cab of Mr. Guidry's truck while he loaded the equipment and had no knowledge of how Mr. Guidry loaded the trailer or secured the equipment.

Mr. Guidry and Ms. Gorum left the property with the utility trailer in tow. They travelled east on Houston River Road approximately twelve to fourteen miles at forty to forty-five miles per hour when, according to Mr. Guidry, "all of a sudden it's like the truck went in the air" and "stopped in mid air." Mr. Guidry testified the truck then turned to the right and rolled over. Neither Mr. Guidry nor Ms. Gorman knew what caused the truck to become uncontrollable. After they emerged from the truck, they saw an electric line lying in the roadway.

Mr. Guidry suffered various injuries in the accident and sued BECi, an unnamed insurance company, and State Farm, his insurer, to recover damages for the injuries he suffered. BECi answered the suit, alleging Mr. Guidry was negligent and his negligence contributed to the accident. In a separate suit, Ms. Gorum sued BECi and Mr. Guidry, alleging they were both negligent in causing the accident and injuries she suffered as a result of the accident. She also sued Federated. State Farm and Mr. Guidry sued BECi and Federated in a separate suit, alleging BECi was negligent in causing the accident. In its suit, State Farm sought to recover the amount it paid Mr. Guidry for his property damages pursuant to the subrogation provision of an automobile insurance policy it issued to him; Mr. Guidry sought to recover the $250 deductible required by State Farm's policy. State Farm and Mr. Guidry were represented by counsel hired by State Farm;

2

counsel for State Farm defended Mr. Guidry against Ms. Gorum's and BECi's claims.

BECi wanted to consolidate the three cases. With the consent of all the parties, the three suits were consolidated and tried together.

At the conclusion of BECi's presentation of its case, Mr. Guidry moved for a directed verdict, asking the trial court to find that BECi did not prove he was negligent in causing the accident. The trial court concluded BECi did not prove Mr. Guidry was negligent and granted the motion. The jury then considered the issues of whether "there was any fault on the part of BECi" and damages. The jury awarded verdicts in favor of each plaintiff. State Farm and Mr. Guidry's subrogation claims were awarded pursuant to a stipulation negotiated by counsel for State Farm. After the trial court signed a judgment in favor of Mr. Guidry, BECi filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial (JNOV). Mr. Guidry then filed a cross motion for JNOV (cross motion). Both BECi's motion for JNOV and Mr. Guidry's cross motion were heard by the trial court in June 2014. At the conclusion of the hearing, the trial court denied BECi's motion but granted Mr. Guidry's cross motion. After the trial court signed a judgment denying its motion for JNOV, BECi filed a motion for suspensive appeal and posted the security bond set by the trial court. Mr. Guidry answered the appeal.

As discussed in more detail below, the filing of the complete record of the proceedings below was delayed due to the failure of the court reporter to complete transcription of the trial testimony timely. After the entire record was lodged, BECi filed a partial peremptory exception of res judicata and motion for partial dismissal or request for other relief; Mr. Guidry then filed a peremptory exception

3

of res judicata and acquiscence in the judgment and motion for partial judgment. After Mr. Guidry filed his answer, BECi filed a motion to strike and dismiss the answer.

Because our rulings on the exceptions and/or motions filed on appeal may resolve some of the issues raised in the parties' assignments of error, we address the exceptions and motions before considering the assigned errors.

## EXCEPTIONS AND MOTIONS AND FILED ON APPEAL

### *BECi's Partial Peremptory Exception of Res Judicata and Motion for Partial Dismissal or Request for Other Relief*

BECi argues in its exception of res judicata that Mr. Guidry filed his cross motion after the delay for filing a motion for JNOV expired and contends that the June 2014 judgment granting the cross motion and increasing Mr. Guidry's damage awards is an absolute nullity.

Louisiana Code of Civil Procedure Article 1811(A)(1) provides that a motion for JNOV may be filed "[n]ot later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment under Article 1913." Mr. Guidry's judgment was signed on December 9, 2013, and the clerk of court mailed notice of the judgment on December 12, 2013. Accordingly, the seven-day delay provided in Article 1811 ended December 23, 2013, and Mr. Guidry's cross motion filed January 6, 2014, was not filed within the seven-day delay provided in Article 1811(A)(1).

Mr. Guidry argues his cross motion was filed timely because: (1) the three consolidated cases were merged into one case; (2) judgment was not issued in the State Farm case until January 10, 2014; and (3) judgment was not issued in the Gorum case until February 21, 2014.

BECi filed two unopposed motions to consolidate the Gorum and State Farm cases with the Guidry case. Louisiana Code Civil Procedure Article 1561 provides, in pertinent part:

> A. When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding that common issues of fact and law predominate and, in the event a trial date has been set in a subsequently filed action, upon a finding that consolidation is in the interest of justice.

BECi sought to consolidate the cases because they "involve[d] the same alleged accident, the same issues of law and fact, and the same defendants" and because consolidating the cases was in "the interest of judicial efficiency and [would] save costs to the litigants."

Mr. Guidry argues the record reflects that his case was merged with the State Farm case. The State Farm judgment was signed January 10, 2014; therefore, Mr. Guidry contends his cross motion was filed timely. This court addressed the issue of consolidated cases merging into one in *OMNI Energy Services Corp. v. Rhyne*, 14-251, pp. 21-22 (La.App. 3 Cir. 10/15/14), 150 So.3d 509, 523, stating:

> [T]he supreme court has stated that consolidation pursuant to La.Code Civ.P. art. 1561 is "a procedural device which allows a trial court to deal with similar issues of law or fact in one trial; it does not merge the parties, affect the running of delays, or authorize consolidation of judgments or appeals." *Davis v. Am. Home Prods. Corp.,* 95–1035, p. 1 (La.5/19/95), 654 So.2d 681, 681. Although there are cases which state that a consolidation of actions does not act to merge two cases into one unless the records clearly reflects an intention to do so, we have found no authority for such a rule. *Ricks v. Kentwood Oil Co., Inc.,* 09–677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363, *writ denied,* 10–1733 (La.10/15/10), 45 So.3d 1112; *Johnson v. Shafor,* 08–2145 (La.App. 1 Cir. 7/29/09), 22 So.3d 935, *writ denied,* 09–1921 (La.11/20/09), 25 So.3d 812.

In *OMNI*, the court refused to grant a judgment ordering that cases consolidated in the trial court were merged into one suit. As noted in OMNI, we can find no

authority for the rule that consolidation does not merge cases unless the record clearly reflects that the parties intended to merge the cases. More importantly, we have not found any case in which consolidated cases were held to be merged because the records reflected the parties intended them to be merged. Furthermore, the record does not evidence the parties in these three cases intended to merge the three cases into one or to merge the Guidry and State Farm cases into one.

Mr. Guidry argues that La.Code Civ.P. art. 697 required him to join State Farm as a plaintiff. Article 697 provides that when, as here, a person has been subrogated to an incorporeal right and the subrogation is partial, the right must be judicially enforced by the subgrogor and subrogee. La.Code Civ.P. art. 697(1). Notably, Mr. Guidry did not add State Farm as a party in his suit; State Farm joined Mr. Guidry as a plaintiff in its suit to recover against BECi as required by Article 697. Moreover, judgment was rendered in favor of State Farm and Guidry and against BECi pursuant to a joint stipulation negotiated by counsel for State Farm, and the judgment in favor of Mr. Guidry was only $250. For these reasons, the joinder requirement of Article 697 does not affect our conclusion that Mr. Guidry's suit was not merged with the State Farm subrogation suit.

Mr. Guidry also argues that because BECi did not object to his late filing of the cross motion, it waived the right to object to it on appeal. The delays for filing devolutive and suspensive appeals are based on the delays for applying for a new trial or JNOV. *See* La.Code Civ.P. arts. 2087(A)(1);[1] 2123(A)(1).[2] In *Jones v.*

---

[1]Louisiana Code of Civil Procedure Article 2087(A)(1) provides, in pertinent part:

*Gillen*, 564 So.2d 1274 (La.App. 5 Cir.), *writs denied*, 568 So.2d 1080, 1081 (La.1990), the court determined that a trial court's substantive amendment of a judgment was invalid because it was rendered pursuant to an untimely motion for new trial. As a result, the plaintiff's appeal of the invalid judgment was held to be untimely, and the court of appeal did not have jurisdiction to hear the appeal. *See also Baton Rouge Bank & Trust Co. v. Coleman*, 582 So.2d 191 (La.1991), which held that the failure to timely file a devolutive appeal is jurisdictional; *State ex rel. E.A.*, 02-996, p. 3 (La.App. 3 Cir. 10/2/02), 827 So.2d 594, 596, where this court held, "the defect of not taking an appeal timely is jurisdictional, and neither counsel, the trial court, nor the appellant court has the authority to extend this delay."

As the decisions in *E.A.* and *Jones* show, the delays for applying for a new trial or JNOV are jurisdictional, and the delays cannot be extended by a party's failure to object to the late filing of the motion. Accordingly, Mr. Guidry's failure to timely file his cross motion resulted in the trial court losing jurisdiction to act on it, and the judgment granting the relief he requested therein was invalid.

---

A. Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

[2]Louisiana Code of Civil Procedure Article 2123(A)(1) provides, in pertinent part:

A. Except as otherwise provided by law, an appeal that suspends the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within thirty days of any of the following:

(1) The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.

Mr. Guidry next argues that BECi's filing of its motion for JNOV interrupted the running of appeal delays and that interruption of appeal delays extend time for filing JNOV. BECi's motion for JNOV did interrupt the appeal delays. La.Code Civ.P. arts. 2087; 2123. It did not, however, interrupt the delays for filing a motion for JNOV.

**BECi's Motion to Strike and Dismiss Guidry's Answer to Appeal**

In its motion to strike, BECi seeks to have Mr. Guidry's appeal dismissed on the basis that his answer was not filed timely.

An appellee who seeks to have a judgment "modified, revised, or reversed in part" or to be awarded damages against the appellant must file an answer to the appeal and set out the relief sought "not later than fifteen days after the return day or the lodging of the record whichever is later." La.Code Civ.P. art. 2133(A). The appellee's answer is "equivalent to an appeal on his part." *Id.*

On October 21, 2014, the three volume record and fourteen volumes of documentary evidence maintained by the district court clerk of court in Mr. Guidry's case was lodged in this court.[3] The record was supplemented on November 25, 2014, with seven volumes of trial transcripts. That same day, this court issued briefing notices, notifying the parties the record had been filed with this court that date. The record was also supplemented on December 30, 2014, with 210 pages of expert testimony and the transcript of the hearing on the parties' motions for JNOV, and on January 6, 2015, with eighty-three pages of various pleadings from the Gorman and State Farm consolidated cases.

---

[3] Pursuant to La.Code Civ.P. art. 2127.2(C), the district court clerk of court filed the record, exclusive of the trial transcripts that had not been transcribed.

Mr. Guidry filed his answer on January 12, 2015. BECi asserts that Mr. Guidry filed his answer late and that his appeal should be dismissed. Mr. Guidry contends his answer was not late because it was filed within fifteen days of the December 30, 2014 and January 6, 2015 supplemental record filings and because not having access to these supplemental records prejudiced his ability to file an answer.

Mr. Guidry cites *Taylor v. Tulane Medical Center*, 98-1967, 98-1968, 98-1969 (La.App. 4 Cir. 11/24/99), 751 So.2d 949, and *Deutsch, Kerrigan & Stiles v. Rault*, 389 So.2d 1373 (La.App. 4 Cir. 1980), *writ denied*, 396 So.2d 883 (La.1981), as support for his claim that his answer was filed timely. We have reviewed and considered *Taylor* and *Rault* but find the situation presented in *Ventress v. Union Pacific Railroad Co.*, 95-1240 (La.App. 4 Cir. 12/28/95), 666 So.2d 1210, *rev'd in part & remanded*, 96-501 (La. 5/3/96), 672 So.2d 668, more akin to the situation presented here.

In *Ventress*, the court held that the plaintiff's answer was untimely because the late-filed portions of the record were minimal compared to the previously filed portions of the record. Twenty-three volumes of record were filed in *Ventress* on June 8, 1995, and two volumes of supplemental record were filed on July 6, 1995. Here, twenty-four volumes of record were filed by November 25, 2014, the date BECi contends was the date the record was lodged for purposes of Mr. Guidry filing an answer. The additional filings in December 2014 and January 2015 totaled 295 pages and were minimal in comparison to the previously-filed portions of the record. Additionally, as noted above, the November 25, 2014 briefing notice notified Mr. Guidry that the record had been received and filed that day.

9

Mr. Guidry's deadline for filing his answer, therefore, was December 10, 2014. La.Code Civ.P. art. 2133(A).

Mr. Guidry argues that the December 2014 and January 2015 documents were pivotal to the preparation of his answer and that he will be prejudiced if the January 6, 2015 supplement is not determined to be the lodging date of the record for purposes of him filing his answer. In his answer, Mr. Guidry sought the same relief requested in his cross motion and additionally assigned error with the trial court's allowing Dr. Robert Eisenstadt, BECi's economic expert, to testify at trial and requested an increase in economic damages. Mr. Guidry objected to Dr. Eisenstadt's testimony at trial on the same basis that he objected to it in his answer. For these reasons, we find Mr. Guidry was not prejudiced by not having the entire record before him to file his answer.

BECi's second motion to supplement the record specifically identifies the filings contained in the Gorum and State Farm records that it wanted to include in this appeal. That motion states counsel for Mr. Guidry was provided a draft copy of the motion on November 26, 2014, asking counsel to consent to an order that the record be supplemented as requested. The motion also states that Mr. Guidry's counsel signified his agreement to supplementing the record as requested by sending an email and leaving a voice mail on December 3, 2014. Therefore, Mr. Guidry knew no later than December 3, 2014, of the documents from the Gorum and State Farm records that were to be included in this record. Consequently, he was not prejudiced by the January 6, 2015 filing of those records.

Accordingly, Mr. Guidry had notice that the vast majority of the record had been filed with this court on November 25, 2014, and that his answer had to be filed no later than fifteen days after that date. Having found he was not prejudiced

10

by the December 2014 and January 2015 supplemental filings of the record, we conclude Mr. Guidry's answer was not timely filed and dismiss his appeal.

***Guidry's Peremptory Exception of Res Judicata and Acquiescence in the Judgment and Motion for Partial Dismissal***

Mr. Guidry urges in this exception that by virtue of its payment of the Gorum and State Farm judgments, BECi acquiesced in the trial court's findings in those cases that "no comparative fault could be apportioned" to him; therefore, the finding that he was not at fault in causing the accident is res judicata and cannot be appealed. BECi asserts it did not acquiesce in Mr. Guidry's judgment when it paid the Gorum and State Farm judgments.

Mr. Guidry argues BECi's payment of the judgments rendered against it in the Gorum and State Farm cases constitutes res judicata, which is a bar to this appeal. The doctrine of res judicata bars re-litigation of the same issues between the same parties. Louisiana Revised Statutes 13:4231 (emphasis added) provides, in pertinent part:

> Except as otherwise provided by law, *a valid and final judgment is conclusive between the same parties, except on appeal or other direct review*, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> . . . .
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Mr. Guidry seeks to bar an appeal by means of an exception of res judicata. His exception is not supported by law.

Mr. Guidry also claims that BECi acquiesced in the judgment of liability against it by failing to appeal the judgments in the consolidated cases. Louisiana Code of Civil Procedure Article 2085 provides, in part: "An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him."

"Acquiescence in [a] judgment is never presumed and must be established by evidence that leaves no doubt of the required intent." *Vincent v. State Farm Mut. Auto. Ins. Co.*, 95-1538, p. 3 (La.App. 3 Cir. 4/3/96), 671 So.2d 1127, 1129. "'Furthermore, appeals are favored in the law, and forfeiture of a party's right to appeal through acquiesce[nce] should be decreed only when the party's intention to acquiesce and to abandon his right of appeal is clearly demonstrated.'" *Thibodeaux v. Evangeline Parish Sch. Bd.*, 08-1065, p. 1 (La.App. 3 Cir. 10/15/08), 995 So.2d 1252, 1253 (alteration in original) (quoting *Hoyt v. State Farm Mut. Auto. Ins. Co.*, 413 So.2d 1003, 1005 (La.App. 3 Cir.), *writ denied*, 423 So.2d 1180 (La.1982)).

BECi argues its timely filing of its motion for JNOV shows it did not acquiesce in the trial court's finding that Mr. Guidry was not at fault in causing the accident. BECi further argues its filing of this appeal after the trial court denied its motion for JNOV shows it did not acquiesce in the trial court's findings of no negligence and no liability on the part of Mr. Guidry. It also argues its payment of the Gorum and State Farm judgments was a transaction or compromise of those debts and that Mr. Guidry had to be a party to the transaction or compromise for purposes of res judicata.

12

This court has held that the execution of a satisfaction of judgment demonstrates that a party acquiesced in a judgment such that its right to appeal is deemed abandoned. *Theriot v. Castle*, 343 So.2d 399 (La.App. 3 Cir. 1977). In *Johnson v. Hamilton Med. Group*, 05-204, p. 3 (La.App. 3 Cir. 4/20/05), 900 So.2d 341, 343, (quoting *Vincent*, 671 So.2d at 1127), this court determined, however, that "other factors can simultaneously exist to serve as an indication of the appealing party's intent to maintain the right to appeal."

BECi's actions here are similar to the plaintiff's actions in *Johnson*. The judgment in Mr. Guidry's suit was signed December 9, 2013, and BECi filed its motion for JNOV on December 20, 2013. The judgment in the State Farm case was signed January 10, 2014, and the Gorum judgment was signed February 21, 2014. A receipt and satisfaction was filed in the State Farm case and the Gorum case on April 14, 2014.

BECi timely filed its motion for JNOV on December 20, 2013, then timely appealed the trial court's denial of the motion and posted a security bond in the amount of $2,032,223.94. We agree with BECi that these post-trial actions do not evidence an intent to acquiesce in the trial court's finding of comparative liability as to Mr. Guidry when it paid the Gorum and State Farm judgments.

## ASSIGNMENTS OF ERROR

BECi assigns the following five errors with the actions of the trial court:

1. The District Court erred by issuing its June 3, 2014 judgment granting [Mr.] Guidry's untimely-filed motion for JNOV and increasing his award of damages.

2. The District Court erred by accepting Charles Norman as a photogrammetry expert and allowing him to testify based on unreliable methods and deficient inadmissible, inconsistent and speculative evidence.

13

3. The District Court erred by granting [Mr.] Guidry's motion for directed verdict and by failing to allow the jury to adjudicate fault.

4. The District Court erred by issuing its June 3, 2014 judgment denying Defendants' timely-filed motion for JNOV and/or motion for new trial.

5. The District Court erred by casting Federated in judgment.

## DISCUSSION

*Action of Trial Court on Guidry's Motion for JNOV or, in the alternative, New Trial*

For reasons discussed regarding BECi's exception of res judicata, we need not address this assignment of error.

*Trial Court's Acceptance of Charles Norman as an Expert in Photogrammetry*

BECi asserts the trial court committed error when it accepted Charles Norman, an engineer who testified on Mr. Guidry's behalf, as an expert in photogrammetry. The trial court also accepted Mr. Norman as an expert in civil, mechanical, and structural engineering. At issue is Mr. Norman's opinion that the height of the electric line the date of the accident was 13.8 feet or lower. The National Electric Safety Code requires electric lines to be a minimum height of 16 feet; BECi's internal rules require the lines to be a minimum height of 16.5 feet. Mr. Norman applied photogrammetry to a Google Street View photograph taken in March 2008 to reach his conclusion that the line was 13.8 feet or lower. BECi's records do not show the line had been worked on prior to the accident in October 2008.

Louisiana Code of Evidence Article 702 sets forth the general rule for the admissibility of expert testimony in Louisiana:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

The supreme court addressed the role of the trial court with regard to expert testimony in *Cheairs v. State ex rel. Dep't Trans. & Dev.*, 03-680, p. 9 (La. 12/3/03), 861 So.2d 536, 542, where it adopted the three-prong inquiry set forth in *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), for determining whether expert testimony should be admitted:

(1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert [v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in the issue.

A trial court's determination regarding the admissibility of expert testimony and whether a witness is qualified as an expert and competent to testify on a particular subject is within the court's discretion. *Id.* A trial court's qualification of a witness as an expert will not be reversed unless an abuse of discretion is shown. *Id. See also Benoit v. Turner Indus. Group, LLC*, 10-1460, p. 4 (La.App. 3 Cir. 5/4/11), 63 So.3d 443, 447, *rev'd on other grounds*, 11-1130 (La. 1/24/12), 85 So.3d 629, where this court held that a trial court's acceptance of the testimony and

15

methodologies employed by an expert is subject to the abuse of discretion standard of review.

Mr. Norman has over forty-six years of experience as an engineer. He practices in the fields of civil, mechanical, structural, and forensic engineering and has been accepted as an expert in those fields many times. Mr. Norman testified that he had never been tendered or accepted as an expert in photogrammetry. He explained, however, that he has employed photogrammetry in his profession throughout his career and has testified in court to findings he made using photogrammetry. He also testified that he employs orthographic projection to confirm his photogrammetry findings. Additionally, he explained that he actually used four accepted methods to confirm his findings in this case and made physical measurements at the scene of the accident that also confirmed his findings.

BECi contends the trial court erred in qualifying Mr. Norman as an expert in photogrammetry because his methodology of using a Google Street View photograph to establish the height of the electric line in March 2008 was shown to be improper by Dan Mills, its expert on the subject. Mr. Mills has employed photogrammetry much more extensively in his career as an engineer than Mr. Norman has. His company has developed a system of cameras and programs to take photographs like the Google Street View photograph at issue herein. Mr. Mills testified in depth as to how Google takes photographs and combines four photographs into one photograph to create a composite three dimensional photograph. He identified a number of other details of the mechanics used by Google to take and combine the photographs to explain that Mr. Norman's methodology and calculations regarding the height of the wire in March 2008 as

16

reflected in the March 2008 Google Street View photograph were not accurate or reliable.

We have reviewed BECi's complaint that the trial court erred in qualifying Mr. Norman as an expert in photogrammetry in light of his training and qualification as an engineer and his use of photogrammetry throughout his more than forty-six year career as an engineer and find no abuse by the trial court in its qualification. The testimonies of the experts on this issue were very in depth and illuminating such that it allowed the finder of fact to determine the credibility of each expert and his testimony.

***Motion for Directed Verdict***

BECi asserted the affirmative defense of comparative negligence on the part of Mr. Guidry in its answer and contends the trial court erred in granting a directed verdict in favor of Mr. Guidry on the issue of whether he was negligent in causing the accident.

Louisiana Code of Civil Procedure Article 1810 provides:

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

In *Melancon v. Lafayette Insurance Co.*, 05-762, p. 12 (La.App. 3 Cir. 3/29/06), 926 So.2d 693, *writs denied*, 06-974, 06-1006 (La. 6/16/06), 929 So.2d 1291, 1293, this court noted that while Article 1810 does not establish standards for the grant of a directed verdict, such standards have been jurisprudentially

established. These standards were enumerated by this court in *Carter v. Western Kraft Paper Mill*, 94-524, pp. 4-5 (La.App. 3 Cir. 11/2/94), 649 So.2d 541, 544 (citations omitted):

> [A] directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion. The propriety of granting a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims.
>
> Under the foregoing legal principles the question is not whether in our view the plaintiff has proven his case against defendants by a preponderance of the evidence, but rather, whether, upon viewing the evidence submitted, we conclude that reasonable people could not have reached a verdict in favor of the plaintiff against the defendants. . . .
>
> Questions of credibility should not be resolved by a directed verdict. Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Evaluations of credibility play no part in reaching a decision on a motion for directed verdict.

In arguing the trial court erred in granting the motion for directed verdict, BECi misstates the law regarding Mr. Guidry's burden of proof for his claims against it. It states: "Guidry had the burden to demonstrate that any reasonable juror would conclude that the evidence overwhelmingly demonstrated that *only BECi was at fault.*" Comparative fault is an affirmative defense which must be proved by a preponderance of the evidence; the party asserting the defense bears the burden of proof. *Corkern v. Smith*, 06-1569 (La.App. 3 Cir. 6/6/07), 960 So.2d 1152, *writ denied*, 07-1803 (La. 1/25/08), 973 So.2d 754. Therefore, BECi had the burden of proving Mr. Guidry was negligent and his negligence was a cause-in-fact

18

of the accident and his injuries. Contrary to BECi's arguments, Mr. Guidry did not have to prove BECi was 100% at fault.

In *Corkern*, 960 So.2d at 1156, the role of the jury in determining fault was outlined:

> In determining fault, the jury must consider the conduct of each of the parties and the causal relationship between the conduct and the damages. Several factors are to be considered: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of each of the parties, whether superior or inferior; and (5) any extenuating circumstances which might require the party to proceed in haste, without proper thought.

BECi outlines and highlights numerous facts, contradictions, inferences, and credibility issues to show that the jury should have been allowed to determine the fault of both parties and that the trial court erred in granting the directed verdict. Specifically, BECi outlines many instances in which Mr. Guidry's credibility was an issue, especially as to how he loaded the utility pole on the trailer. BECi further attacks the reliability of Mr. Norman's opinions because they were based in large part on Mr. Guidry's credibility.

The determination of essentially every fact in this case is based on the credibility of the twelve witnesses who testified at trial. Moreover, many of the expert opinions are based to some extent on the credibility of the fact witnesses who testified at trial. This is especially true of Mr. Norman's opinion regarding the height of the utility pole on the trailer, which was based on Mr. Guidry's testimony. Two such issues, whether the utility pole could move from the position Mr. Guidry placed it and whether the utility pole could have been at a height greater than 13.8 feet when it made contact with the wire, are at the heart of

Mr. Guidry's claims against BECi and BECi's comparative fault defense. For these reasons, we conclude the trial court erred in granting the directed verdict.

BECi requests that we remand this matter to the trial court for a new trial. The record before us is complete, and we have the authority to determine the issue of comparative liability on the record. We decline to do so, however, because every aspect of this determination rests on weighing the credibility of essentially every witness who testified on the issue at trial. Accordingly, we remand this matter to the trial court for a new trial on the issue of the comparative liability of the parties only.

### Trial Court's Denial of BECi's Motion for JNOV or, in the alternative, Motion for New Trial

In the event this court reversed the trial court's grant Mr. Guidry's cross motion for JNOV, BECi waived this assignment error. Accordingly, it is moot.

### Judgment in Favor of Guidry against Federated

BECi and Federated assign error with judgment being rendered against Federated because Mr. Guidry did not name Federated as a defendant. Mr. Guidry urges that Federated made a general appearance at trial without objection; therefore, it subjected itself to the trial court's jurisdiction in Mr. Guidry's suit.

BECi relies on the court's determination in *Ricks v. Kentwood Oil Co., Inc.*, 09-677, 09-678 (La.App. 1 Cir. 2/23/10), 38 So.3d 363, *writ denied*, 10-1733 (La. 10/15/10), 45 So.2d 1112, as support for its position that Federated should not be named in Mr. Guidry's judgment. In *Ricks*, two suits were consolidated. An insurer was named a defendant in one of the suits but not the other. The court concluded that consolidation of the two suits did "not render the procedural or substantive rights peculiar to one case applicable to a companion case"; therefore,

20

the insurer was not properly included in the judgment in favor of the plaintiff who did not name the insurer as a defendant. *Id*. at 366.

Mr. Guidry urges, however, that Federated made a general appearance at trial with regard to his suit, and judgment was properly rendered against it. He contends Federated waived its right to object to being named in Mr. Guidry's judgment because it failed to object to its inclusion as a defendant on the verdict form.

A party's failure to make a contemporaneous objection to the inclusion or exclusion of an issue or item on a verdict form has long been held to constitute a waiver of the claim. *State v. Parker*, 98-256 (La. 5/8/98), 711 So.2d 694. We have not found any case directly on point but see no reason to relieve Federated of this duty. While it may be difficult for a defendant named in one consolidated suit but not another to make that distinction in open court before a jury, Federated had the opportunity to protect itself from judgment being rendered against it in this suit by objecting to the verdict form. It failed to do so, and we find that failure constitutes a general appearance and a waiver of its right to complain on appeal.

## DISPOSITION

For the reasons set forth above, BECi's partial exception of res judicata and motion for partial dismissal or request for other relief is granted, and the trial court's judgment increasing Mr. Guidry's damage awards is reversed; BECi's motion to strike and dismiss Mr. Guidry's answer to appeal is granted, and Mr. Guidry's appeal is dismissed; Mr. Guidry's peremptory exception of res judicata and acquiescence in the judgment and motion for partial dismissal is denied; the trial court's acceptance of Charles Norman as an expert in photogrammetry is affirmed; the trial court's grant of directed verdict in favor of Mr. Guidry is

21

reversed, and the matter is remanded to the trial court for another trial on the issue of the comparative liability of BECi and Mr. Guidry; and the award of judgment in favor of Mr. Guidry against Federated Rural Electric Insurance Exchange is affirmed. Costs of this appeal are assessed to Mr. Guidry. Trial court costs are to be assessed after the trial on remand.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.**